

# NUMBER 13-13-00139-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ARBOR E&T, LLC, D/B/A
RESCARE WORFORCE SYSTEMS,                     **Appellant,**

**v.**

LOWER RIO GRANDE VALLEY
WORKFORCE DEVELOPMENT
BOARD, INC., D/B/A WORFORCE
SOLUTIONS, INC.,                                **Appellee.**

On appeal from the 398th District Court
of Hidalgo County, Texas.

# OPINION

Before Justices Benavides, Perkes, and Longoria
Opinion by Justice Longoria

In this interlocutory appeal, Arbor E&T, LLC, d/b/a Rescare Workforce Services ("Arbor") challenges the trial court's order granting a plea to the jurisdiction by Lower Rio Grande Valley Workforce Development Board, Inc., d/b/a Workforce Solutions, Inc. ("Workforce Solutions").  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2012).  Arbor contends that the trial court erred for two reasons:  (1) Workforce Solutions is not a state agency and is therefore not entitled to sovereign immunity from suit; and (2) to the extent Workforce Solutions has immunity from suit, it is merely a local governmental entity and the State of Texas has waived its immunity by statute for breach of contract through Subchapter I of Chapter 271 of the Texas Local Government Code.  *See* TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2005).  For the reasons set forth below, we conclude that Workforce Solutions (1) is a governmental unit, (2) is not a state agency, (3) has immunity from suit for performance of its governmental functions, (4) is a local governmental entity within the meaning of Chapter 271, and (5) has had its immunity from suit waived by the Texas Legislature for this suit involving a claim for breach of contract.  Accordingly, we reverse the order of the trial court and remand the case for further proceedings consistent with this decision.

## I. BACKGROUND[1]

Arbor is a for-profit corporation based out of Louisville, Kentucky with offices across the United States, including an office in Austin, Texas.  Workforce Solutions is one of twenty-eight local workforce development boards in Texas.  Workforce Solutions is a non-profit corporation that operates in a workforce development area that covers Hidalgo, Starr, and Willacy Counties.  Workforce Solutions contracts with third parties to

---

[1]  Workforce Solutions agrees with Arbor's recitation of the facts, except with regard to the alleged breach of contract by Workforce Solutions.  *See* TEX. R. APP. P. 38.1(g).

2

find jobs, education, and training for people who have significant barriers to employment, have lost their jobs, or are just entering the workforce. The primary purpose of Workforce Solutions is to administer its workforce development area by, among other things, contracting with third parties to deliver publicly-funded training and employment services to employers and job seekers in the region.

In August 2008, Arbor contracted with Workforce Solutions to provide youth employment services. In August 2011, Arbor filed this suit against Workforce Solutions and its individual board members to recover sums allegedly due to Arbor under the contract. The damages alleged in the underlying case arise from Workforce Solutions's alleged breach of contract involving its failure to pay (1) funds that are due and owing for services provided under the contract that Workforce Solutions admits are due, (2) funds that Workforce Solutions improperly "disallowed" or refused to pay Arbor in connection with a summer youth program in 2009, and (3) funds in the form of a fine that was improperly levied against Arbor by Workforce Solutions.

Workforce Solutions filed a plea to the jurisdiction, asserting that it is entitled to sovereign immunity from suit. In response, Arbor argued that Workforce Solutions does not have immunity from suit and that even if it does have immunity, it is merely a "local governmental entity" subject to the waiver of sovereign immunity in Subchapter I of Chapter 271 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 271.152. The trial court granted Workforce Solutions's plea to the jurisdiction, and Arbor filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (permitting an interlocutory appeal of an order that "grants or denies a plea

3

to the jurisdiction by a governmental unit as that term is defined in Section 101.001").
The claims against the individual board members remain pending in the trial court.

## II. MOTION TO SUPPLEMENT

We heard oral argument in this case on September 26, 2013. The following day, Arbor filed a motion for leave to "re-open and supplement brief" requesting that it be allowed to supplement the appendix to its brief with an exhibit that is not part of the appellate record. *See* TEX. R. APP. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record."); 38.1(k)(2) ("Appendix in Civil Cases, Optional Contents"); 38.7 ("Amendment or Supplementation").

The exhibit at issue is an excerpt from the self-evaluation statement by the Texas Workforce Commission ("TWC"), which is now on file with the Texas Sunset Advisory Commission. It consists of two pages of legal analysis from the TWC's general counsel asserting that local workforce development boards, such as Workforce Solutions, are "non-governmental entities." In relevant part, the report states as follows:

> Local Workforce Development Boards ("LWDBs") are quasi-governmental entities incapable of invoking sovereign immunity. The Texas Legislature has made a conscious decision to treat LWDBs variously in different circumstances as state or local governmental entities or nonprofit human services organizations.
>
> In HB 936 (77th R Session), the Legislature allowed LWDBs to share with local and state governments certain rights where they would benefit financially. They also made boards subject to the disclosure and open government provisions by which both local and state governments must abide.
>
> If LWDBs were either state or local governmental entities, the Legislature would not have taken the approach of treating them as such governmental bodies for certain purposes only. They would have all rights and responsibilities of that level of government instead of only those specifically granted.

4

The report concludes with the recommendation that the Legislature "change [existing law] to designate Boards as non-governmental entities."

In its motion, counsel for Arbor certified that he had conferred with counsel for Workforce Solutions and that Workforce Solutions was opposed to the relief requested in Arbor's motion. *See* TEX. R. APP. P. 10.1(a)(5). Accordingly, on October 3, 2013, this Court entered an order requesting a response from Workforce Solutions. In our order, we noted that "[a]n appellate court cannot consider documents cited in a brief and attached as appendices if they are not formally included in the record on appeal." *Cantu v. Horany*, 195 S.W.3d 867, 870 (Tex. App.—Dallas 2006, no pet.); *see also Adams v. Reynolds Tile and Flooring, Inc.*, 120 S.W.3d 417, 423 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (stating that the attachment of documents as appendices to briefs does not constitute formal inclusion in the record on appeal). We also noted that "[m]aterial outside the record that is improperly included in or attached to a party's brief may be stricken." *Siefkas v. Siefkas*, 902 S.W.2d 72, 74 (Tex. App.—El Paso 1995, no writ).

However, we recognized that we may "consider documents submitted by the parties that are outside of the record for the purpose of determining our own jurisdiction." *Harlow Land Co. v. City of Melissa*, 314 S.W.3d 713, 716 n.4 (Tex. App.—Dallas 2010, no pet.); *Burgess v. State*, 313 S.W.3d 844, 854 n.5 (Tex. App.—Fort Worth 2010, no pet.) ("We may consider documents submitted by the parties that are outside of the trial court's record for the purpose of determining our own civil jurisdiction."). Furthermore, in this case, our jurisdiction is at issue because the parties disagree about whether Workforce Solutions is a "governmental unit." *See Terrell v.*

5

*Tex. Serenity Acad., Inc.*, 290 S.W.3d 424, 424–25 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (dismissing appeal from interlocutory order granting plea to the jurisdiction after concluding that defendant was not a "governmental unit" under the Texas Tort Claims Act); *see also Cantu Servs., Inc. v. United Freedom Assoc., Inc.*, 329 S.W.3d 58, 64 (Tex. App.—El Paso 2010, no pet.) ("As UFA is not a governmental unit, we do not find that any of the statutorily-permitted exceptions in Section 51.014 would permit Cantu's appeal of the trial court's interlocutory order [granting UFA's plea to the jurisdiction] in this case.").

On October 14, 2013, we received a response from Workforce Solutions in which it asserted two grounds for opposing Arbor's motion. First, the legal opinion of general counsel for the TWC is not binding on this Court. Second, the opinion "literally mirrors" Abror's argument and is therefore merely cumulative and not necessary to fully brief the issue of this Court's jurisdiction. Workforce Solutions also argued, in the alternative, that the TWC's statement recognizes that there has been no clear and unambiguous waiver of its sovereign immunity and further demonstrates that it is a quasi-governmental entity with sovereign immunity from suit. Based on the foregoing, Workforce Solutions argued that this Court should deny Arbor's motion.

On October 18, 2013, Arbor filed its reply to Workforce Solution's response, addressing the arguments made by Workforce Solutions. But more importantly for our purposes, Arbor argued that the exhibit at issue "eliminates this Court's jurisdiction." According to Arbor, the TWC's statement "destroys the notion" that Workforce Solutions is a "governmental unit of any kind." Arbor argues that "the TWC self-evaluation destroys this Court's appellate jurisdiction because if [Workforce Solutions] is not a

6

governmental unit, there is no basis for appeal under [Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code.]"  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).  Based on the foregoing, we grant the motion to supplement the record with the report.

### III.  STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial court's subject matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).  We review the record de novo to determine whether the trial court has subject matter jurisdiction.  *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).  "We consider only the evidence pertinent to the jurisdictional inquiry and do not weigh the merits."  *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).  Also, we construe the pleadings in favor of the plaintiff, accepting all its allegations as true.  *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555.  To prevail, the defense must show that, even accepting all of the plaintiff's allegations as true, an incurable jurisdictional defect remains on the face of the pleadings that deprives the trial court of subject matter jurisdiction.  *Brenham Hous. Auth. v. Davies*, 158 S.W.3d 53, 56 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

### IV.  ANALYSIS

In two issues, Arbor contends that (1) Workforce Solutions is not a state agency with immunity from suit and (2) at most, Workforce Solutions is a "local governmental entity" subject to the waiver of immunity from suit in Subchapter I of Chapter 271 of the Texas Local Government Code.  *See* TEX. LOC. GOV'T CODE ANN. § 271.152.

7

## A. This Court's Jurisdiction

Unless Workforce Solutions is a "governmental unit," as that term is defined by the Texas Tort Claims Act ("TTCA"), *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3) (West Supp. 2011), we do not have jurisdiction to hear this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8); *LTTS Charter School, Inc. v. C2 Construction, Inc.*, 342 S.W.3d 73, 78 (Tex. 2011) (holding that a defendant's status as a "governmental unit" determines whether a party is "entitled to take an interlocutory appeal" of an order granting or denying a plea to the jurisdiction).

The TTCA states a four-part definition of "governmental unit," including this broad provision: "any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(D).

In this case, we observe that local workforce development boards, governed by Chapter 2308 of the Texas Government Code, are part of the multi-tiered workforce development system implemented by the Workforce Investment Act. *See* TEX. GOV'T CODE ANN. §§ 2308.001–.403 (West 2005 & Supp. 2011). The system includes the TWC, which is "a state agency established to operate an integrated workforce development system in this state . . . and to administer the unemployment compensation insurance program in this state." TEX. LABOR CODE ANN. § 301.001(a) (West 2006). The system also includes the Texas Workforce Investment Council, which "acts as a state human resource investment council under the Job Training Reform Amendments of 1992 (29 U.S.C. Section 1792 et seq.) and as a state workforce investment board under the Workforce Investment Act of 1998 (Pub. L. No. 105-220)."

8

*Id.* § 2308.051(a).[2] Finally, there are local workforce development boards, such as Workforce Solutions, which "plan and oversee the delivery of workforce training and services" and "evaluate workforce development in [their respective] workforce development area[s]," which are designated by the governor. *Id.* § 2308.253(a).

The "status" of Workforce Solutions as a local workforce development board is conferred by statute, specifically, by the government code, which includes comprehensive provisions governing the creation of local workforce development boards. *See id.* § 2308.253 (providing for the "creation of local workforce development boards"). Furthermore, the government code also makes local workforce development boards an essential component of the state's integrated workforce development system. *See id.* § 2308.302(a) (West 2008) (stating that local workforce development boards are required to "ensure effective outcomes consistent with statewide goals, objectives, and performance standards approved by the governor").

The "authority" of Workforce Solutions is also derived by statute. The Texas Government Code gives a "local workforce development board," such as Workforce Solutions, the authority to "(1) plan and oversee the delivery of workforce training and services; and (2) evaluate workforce development in the workforce development area." *Id.* § 2308.253(a). In addition, the government code confers certain powers and duties on local workforce development boards that may not be exercised until "the board is certified by the governor." *Id.* § 2308.254(a)(2) (West 2008).

---

[2] The Council is "attached for administrative purposes to the office of the governor." *Id.* § 2308.051(b). And "[t]he governor . . . appoint[s] the members of the council as provided by . . . [the Act]." *Id.* § 2308.052(a). The Council's membership must include, among others, the commissioner of education, the commissioner of higher education, the commissioner of human services, the executive director of the Texas Department of Economic Development, and the executive director of the TWC. *Id.* § 2308.052(b)(5)(A)–(E).

9

For instance, they are "directly responsible . . . for the operational planning and administration of all workforce training and services funded through the [TWC] to the local area." *Id.* § 2308.302(b). They are also "directly responsible and accountable . . . for the planning and oversight of all workforce training and services and the evaluation of all workforce development programs in [their respective] workforce development area[s]." *Id.* § 2308.301(a) (West 2008). Among other things things, they must "serve as a single point of contact for local businesses to communicate their skill needs and to influence the direction of all workforce development programs in the workforce development area." *Id.* § 2308.303(a)(1). They have the power to "create local career development centers." *Id.* § 2308.303(a)(5). They must "assume the functions and responsibilities of local workforce development advisory boards, councils, and committees authorized by federal or state law, including private industry councils, quality workforce planning committees, job service employer committees, and local general vocational program advisory committees." *Id.* § 2308.303(a)(7). They have the power to "monitor and evaluate the effectiveness of the career development centers, state agencies and other contractors providing workforce training and services, and vocational and technical education programs operated by local education agencies and institutions of higher education to ensure that performance is consistent with state and local goals and objectives." *Id.* § 2308.303(a)(8). They also have the power to "contract with an appropriate entity for the provision of [employment] services." *Id.* § 2308.303(b). The overall effect of Chapter 2308 is to give local workforce development boards the authority to administer their respective local workforce development areas, albeit under

the direction and close supervision of the governor, the TWC, and the Texas Workforce Investment Council.

Finally, local workforce development boards are subject to several statutes that give them governmental status. Both the Texas Government Code and the Texas Local Government Code recognize the status of a "local workforce development board" as part of the "local government." *See id.* § 791.003(4)(D) (West Supp. 2011) ("'Local government' means a . . . local workforce development board created under Section 2308.253"); TEX. LOC. GOV'T CODE ANN. § 271.081 (West 2005) ("'[L]ocal government' means . . . a local workforce development board created under Section 2308.253 . . . ."). In addition, a "local workforce development board" is a "governmental body" under the Texas Open Meetings Act and Texas Public Information Act. TEX. GOV'T CODE ANN. §§ 551.001(3)(I), 552.003(1)(a)(x) (West 2012). Furthermore, the TWC's self-evaluation statement now on file with the Texas Sunset Advisory Commission, which we have admitted into the record, recognizes that "[t]he Texas Legislature has made a conscious decision to treat [local workforce development boards] variously in different circumstances as state or local governmental entities or nonprofit human services organizations."

In sum, as a local workforce development board, Workforce Solutions is part of a multi-tiered, comprehensive workforce development system implemented by the Workforce Investment Act. We conclude that local workforce development boards are governmental units under the TTCA for the following reasons: (1) the TTCA defines "governmental unit" broadly to include "any other institution, agency, or organ of government" derived from state law; (2) the Texas Government Code defines local

11

workforce development boards as part of the integrated workforce development system implemented by the Workforce Investment Act; (3) they must be created in accordance with the laws of this state; (4) they are subject to state laws and rules governing their powers, duties, and responsibilities; (5) together with the TWC and the Workforce Investment Council, they plan and oversee the delivery of workforce training and services and evaluate workforce development in their respective workforce development areas; (6) they must ensure effective outcomes consistent with statewide goals, objectives, and performance standards approved by the governor; and (7) the Texas Legislature considers local workforce development boards to be "governmental" in nature under other laws outside Chapter 2308 of the Texas Government Code. *See Alamo Workforce Development, Inc. v. Vann*, 21 S.W.3d 428, 432–33 (Tex. App.—San Antonio 2000, no pet.) (holding that "[c]learly this statutorily-defined structure establishes that [local] workforce [development] boards act as arms of the State and carry out the policies established by the [TWC]").

Accordingly, we conclude that we have jurisdiction to decide this interlocutory appeal because Workforce Solutions is a "governmental unit." *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.014(a)(8), 101.001(3).

## B. Workforce Solutions Is Not a State Agency

In its first issue, Arbor argues that Workforce Solutions is not a state agency. The Texas Supreme Court has previously indicated that the Texas Legislature has the power to designate a private entity—such as Workforce Solutions—as a "state agency for certain purposes." *Klein v. Hernandez*, 315 S.W.3d 1, 8 (Tex. 2010). In *Klein*, the Court held that Chapter 312 of the Texas Health and Safety Code made Baylor College

12

of Medicine—a private, non-profit medical school—a state agency for certain purposes. *See id.* at 4 (quoting TEX. HEALTH & SAFETY CODE ANN. § 312.007(a) ("A medical and dental unit, supported medical or dental school, or coordinating entity is a state agency . . . .")).

In this case, in contrast, there is no comparable statutory authority classifying Workforce Solutions as a state agency. Of course, the TWC is "a state agency." TEX. LABOR CODE ANN. § 301.001(a) (West 2006). And Workforce Solutions "is directly responsible . . . for the operational planning and administration of all workforce training and services funded through the [TWC] to the local area." TEX. GOV'T CODE ANN. § 2308.302(b) (West 2008). However, as set forth below, that does not make Workforce Solutions a state agency.

"The cardinal rule of statutory construction is to ascertain and give effect to the Legislature's intent." *Klein,* 315 S.W.3d at 6. As the examples cited above demonstrate, when the Legislature intends to make an entity a state agency, it uses that exact language. *See, e.g.,* TEX. LABOR CODE ANN. § 301.001(a) ("[The TWC] is a state agency . . . ."); TEX. HEALTH & SAFETY CODE ANN. § 312.007(a) ("A . . . supported medical . . . school . . . is a state agency . . . ."). And although we have cited only two examples, there are others.

For instance, under Title II of the Texas Government Code, "[t]he office of court administration is an agency of the state and operates under the direction and supervision of the supreme court and the chief justice of the supreme court." TEX. GOV'T CODE ANN. § 72.011(a) (West 2005). Another example is the Texas Legislative Council, which under Title III of the Texas Texas Government Code, "is an agency of

13

the legislative branch of state government." TEX. GOV'T CODE ANN. § 323.001(a) (West 2005). A third example is the Texas Medical Board, which under the Texas Occupations Code, "is an agency of the executive branch of state government with the power to regulate the practice of medicine." TEX. OCC. CODE ANN. § 152.001 (West Supp. 2011). Again, there is no comparable statute making Workforce Solutions a state agency.

Furthermore, Workforce Solutions does not fit within the definitions of "state agency" that appear in the Texas Civil Practice and Remedies Code and the Texas Labor Code. In Chapter 105 of the Texas Civil Practice and Remedies Code, the term "state agency" is defined to mean "a board, commission, department, office, or other agency that: (A) is in the executive branch of state government; (B) was created by the constitution or a statute of this state; and (C) has statewide jurisdiction." TEX. CIV. PRAC. & REM. CODE ANN. § 105.001(3) (West 2004). Workforce Solutions is a local workforce development board, and thus a "board," but it still does not fit within this definition of a "state agency" because (1) there is no statutory authority assigning it to the executive branch; (2) it was created by a written agreement of the local chiefs *pursuant* to the government code, not directly *by* the the government code or *by* the constitution or any other statute, as were the other entities cited above as examples; and (3) it does not have statewide jurisdiction.

Similarly, in Chapter 21 of the Texas Labor Code, the term "state agency" is defined as follows:

> (A) a board, commission, committee, council, department, institution, office, or agency in the executive branch of state government having statewide jurisdiction;

14

(B) the supreme court, the court of criminal appeals, a court of appeals, or the State Bar of Texas or another judicial agency having statewide jurisdiction; or

(C) an institution of higher education as defined by Section 61.003, Education Code.

TEX. LABOR CODE ANN. § 21.002(14) (West Supp. 2011). Again, Workforce Solutions is a "board," but it does not meet the other criteria for being a state agency. There is no statute assigning it to any branch of state government, nor is there any statute making it a part of the TWC—rather, the statute makes it part of the State's integrated workforce development system, which includes the TWC. *See* TEX. GOV'T CODE ANN. § 2308.253(a). And, perhaps more obviously, it does not have statewide jurisdiction. Based on the foregoing, we conclude that Workforce Solutions is not a state agency.

## C. Workforce Solutions Has Immunity from Suit

In the second part of its first issue, Arbor maintains that Workforce Solutions does not have immunity from suit. As set forth above, however, we have held that Workforce Solutions is a "governmental unit" within the meaning of the TTCA. Thus, the question posed is whether Workforce Solutions has immunity from suit for breach of contract by virtue of its status as a "governmental unit" under the TTCA.

Here, we must observe that the TTCA does not confer immunity, but rather, waives it. *See City of Galveston v. State*, 217 S.W.3d 466, 468 (Tex. 2006) ("[A] governmental unit is immune from tort liability unless the Legislature has waived immunity."). "Immunity was not bestowed by legislative or executive act; it arose as a common-law creation of the judiciary." *Id.* at 473. Yet, the nature, power, and purposes of local workforce development boards demonstrate that they exist as distinct governmental entities entitled to assert immunity in their own right for the performance

15

of governmental functions. *See Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self–Ins. Fund*, 212 S.W.3d 320, 326 (Tex. 2006). Accordingly, we conclude that Workforce Solutions has immunity from suit.

Arbor's first issue is overruled.

## D. Workforce Solutions Is a Local Governmental Entity

In its second issue, Arbor maintains that Workforce Solutions's immunity from suit was waived pursuant to Subchapter I of Chapter 271 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 271.152. Section 271.152 of the Texas Local Government Code waives qualifying local governmental entities' immunity from suit for certain breach of contract claims as follows:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

*Id.* "According to its plain terms, the statute by clear and unambiguous language waives a governmental entity's immunity from suit for breach of written contract." *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011).

The Texas Supreme Court has explained as follows:

> For section 271.152's waiver of immunity to apply, three elements must be established: (1) the party against whom the waiver is asserted must be a "local governmental entity" as defined by section 271.151(3), (2) the entity must be authorized by statute or the Constitution to enter into contracts, and (3) the entity must in fact have entered into a contract that is "subject to this subchapter," as defined by section 271.151(2). TEX. LOC. GOV'T CODE §§ 271.151–.152. A "contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2).

16

*Id.* at 134–35.

We begin with the first element, which is whether Workforce Solutions is a qualifying local governmental entity, as defined by section 271.151(3).[3] "[B]y enacting section 271.152, the Legislature intended to loosen the immunity bar so that all local governmental entities that have been given or are given the statutory authority to enter into contracts shall not be immune from suits arising from those contracts." *Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist.*, 212 S.W.3d at 327 (quotations omitted). There is no indication that the Legislature intended to exclude contracts by local workforce development boards from enforcement. *See id.*

As in *Ben Bolt–Palito Blanco Consolidated Independent School District*, Workforce Solutions argues that section 271.152 does not clearly and unambiguously waive its immunity from suit because it does not meet section 271.151(3)'s definition of a "local governmental entity." *See id.* But as we have said, Workforce Solutions itself is a discrete governmental unit separate and apart from the TWC, and its immunity derives from the performance of governmental functions. *See id.* at 327–28. "The only

---

[3] Section 271.151(3) provides in relevant part as follows:

"Local governmental entity" means a political subdivision of this state, other than a county or a unit of state government, as that term is defined by Section 2260.001, Government Code, including a:

(A) municipality;

(B) public school district and junior college district; and

(C) special-purpose district or authority, including any levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, emergency service organization and river authority.

TEX. LOC. GOV'T CODE ANN. § 271.151(3) (West 2005).

entities expressly excluded from the statutory waiver are counties and units of state government, and . . . [Workforce Solutions] itself is neither of these." *Id.* at 328.

Workforce Solutions argues that it is exempt because it is a "unit of state government." *See* TEX. GOV'T CODE ANN. § 2260.001(4) (West 2008).[4] The Texas Supreme Court has not discussed this issue at length, but in one opinion issued in 2007, the Court interpreted the definition of "unit of state government" to mean "*any* entity that is in any branch of state government and that is created by the constitution or a statute." *Abilene Housing Auth. v. Gene Duke Builders, Inc.*, 226 S.W.3d 415, 415 (Tex. 2007) (per curiam) (quotations omitted) (emphasis added). Workforce Solutions fails to meet either of these criteria.

First, it is not in any branch of the state government. *See id.* We previously noted several examples of entities that the Texas Legislature has statutorily assigned to specific branches of the State government. For example, under Title II of the Texas Government Code, "[t]he office of court administration is an agency of the state and operates under the direction and supervision of the supreme court and the chief justice of the supreme court." TEX. GOV'T CODE ANN. § 72.011(a). Another example we cited is the Texas Legislative Council, which under Title III of the Texas Texas Government Code, "is an agency of the legislative branch of state government." TEX. GOV'T CODE ANN. § 323.001(a). A third example we cited is the Texas Medical Board, which under

---

[4] Section 2260.001(4) provides as follows:

"Unit of state government" means the state or an agency, department, commission, bureau, board, office, council, court, or other entity that is in any branch of state government and that is created by the constitution or a statute of this state, including a university system or institution of higher education. The term does not include a county, municipality, court of a county or municipality, special purpose district, or other political subdivision of this state.

TEX. GOV'T CODE ANN. § 2260.001(4) (West 2008).

the Texas Occupations Code, "is an agency of the executive branch of state government with the power to regulate the practice of medicine." TEX. OCC. CODE ANN. § 152.001. In this case, there is no comparable statutory authority assigning Workforce Solutions to any particular branch of government.

Furthermore, other statutory provisions indicate that Workforce Solutions is not within any branch of state government. For instance, the Texas Open Meetings Act defines a "governmental body" to include "a board, commission, department, committee, or agency within the executive or legislative branch of state government that is directed by one or more elected or appointed members." TEX. GOV'T CODE ANN. § 551.001(3)(A). The same definition includes ten other prongs, one of which lists a "local workforce development board." *Id.* § 551.001(3)(I). If a "local workforce development board" were within any branch of state government, it would be unnecessary to list it separately from the first prong of the definition, which includes a board within the executive or legislative branch.

Another example is the Texas Public Information Act, which uses a very similar definition of "governmental body" that has a total of twelve prongs. *Id.* § 552.003(1)(A). The first prong is "a board, commission, department, committee, institution, agency, or office that is within or is created by the executive or legislative branch of state government and that is directed by one or more elected or appointed members." *Id.* § 552.003(1)(A)(i). The tenth prong is a "local workforce development board." *Id.* § 552.003(1)(A)(x). Again, this indicates that a "local workforce development board" is not within any branch of State government. Accordingly, we conclude that Workforce Solutions is not within any branch of state government.

19

Second, Workforce Solution was *not* created by the constitution or a statute. *See Abilene Housing Auth.*, 226 S.W.3d at 415. The Texas Government Code does *not* purport to create Workforce Solutions or any other local workforce development board. Rather, in relevant part, the code states that a local workforce development board *may* be created *by* the chief elected officials in a workforce development area. TEX. GOV'T CODE ANN. § 2308.253(a) ("The chief elected officials in a workforce development area *may* form, in accordance with rules established by the Texas Workforce Commission, a local workforce development board . . . .") (emphasis added). This statutory language is absolutely clear in stating the chief elected officials *may* form a local workforce development board. *Id.* Thus, Workforce Solutions was created *by* the chief elected officials, *not* by the statute.[5]

Some might mistakenly believe that the statute says something to the effect that the local workforce development board known as "Workforce Solutions" is hereby created. But it does not. Furthermore, we know the Legislature could have taken that approach because it did so in the case of (1) the Office of Court Administration, which was created by Title II of the Texas Government Code, *see* TEX. GOV'T CODE ANN. § 72.011(a); (2) the Texas Legislative Council, which was created by Title III of the Texas Government Code, *see id.* § 323.001(a); (3) the Texas Medical Board, which was

---

[5] Chapter 2308 further provides as follows:

Before a local workforce development board may be created, at least three-fourths of the chief elected officials in the workforce development area who represent units of general local government must agree to the creation of the board, including all of the chief elected officials who represent units of general local government that have populations of at least 200,000.

TEX. GOV'T CODE ANN. § 2308.253(c). The agreement must be in writing and include specific information specified by statute. *Id.* § 2308.253(e).

created by the Texas Occupations Code, TEX. OCC. CODE ANN. § 152.001; and (4) the Texas Workforce Investment Council, which was created by the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 2308.051(b). In contrast, Workforce Solutions is not even mentioned in any statute, much less created by one. Rather, it was created *by* the written agreement of the chief elected officials in its workforce development area, as authorized by statute. *Id.* § 2308.253(a).

## E. Workforce Solutions's Immunity from Suit Has Been Waived

Because Workforce Solutions is a "local governmental entity," as defined by Section 271.151(3), and was authorized to enter and did in fact enter into a written contract stating the essential terms of the agreement to receive youth employment services from Abror, which agreement was properly executed, *see* TEX. LOC. GOV'T CODE ANN. § 272.151(2), we conclude that the statutory waiver applies to this breach of contract dispute. Accordingly, Workforce Solutions's immunity from suit has been waived.

Arbor's second issue is sustained.

## V. CONCLUSION

The order of the trial court is reversed, and the case is remanded for further proceedings consistent with this decision.

_____
NORA L. LONGORIA
Justice

Delivered and filed the
5th day of December, 2013.

21